## Atlantic Richfield Company v. Canaan Oil Company et al.
## (11761)

Peters, C. J., Healey, Shea, Dannehy and Cioffi, Js.

Argued November 12, 1986—decision released February 3, 1987

*Michael F. Dowley,* for the appellant-cross appellee (defendant Waterbury Petroleum Products, Inc.).

*Richard W. Tomc,* with whom, on the brief, was *John N. Montalbano,* for the appellee-cross appellant (plaintiff).

SHEA, J. The plaintiff Atlantic Richfield Company (ARCO) sued the defendants Canaan Oil & Fuel Company, Canaan Oil Company, and Geoffrey S. Smith, Jr., the president of Canaan Oil & Fuel Company, for the balances due both on a promissory note payable to ARCO and on the sale of petroleum products, an aggregate amount of $49,725.52. Default judgments were rendered against those defendants, who are not involved in the present appeal. ARCO also sued the defendant Waterbury Petroleum Products, Inc. (the defendant), as guarantor of the Canaan companies' outstanding indebtedness. The defendant filed a counterclaim on the basis of the refusal of ARCO to extend certain discounts and credit privileges for the defendant's purchases of fuel. After a trial to a jury, the court, *Edelberg, J.,* rendered judgment in accordance with verdicts for the defendant on the complaint and for the plaintiff on the counterclaim. In its appeal the defendant raises various claims of error relating to the trial court's (1) jury instructions, (2) rulings that generally precluded the introduction into the case of references to federal energy regulations and federal court deci-

sions, and (3) refusal to allow the defendant to call the plaintiff's counsel as a witness. The plaintiff has cross appealed from the directed verdict in favor of the defendant on the allegation of the complaint that the defendant had guaranteed the indebtedness of the Canaan companies, and from certain rulings concerning discovery and the pleadings. We find no error in either the appeal or the cross appeal.

On August 21, 1969, the Canaan companies and Geoffrey S. Smith, Jr., executed a promissory note payable to ARCO in the amount of $50,000. Canaan Oil Company also became indebted to ARCO under various distributorship agreements. On August 14, 1975, the defendant purchased the assets of the Canaan Oil Company. ARCO alleges that in this transaction the defendant agreed to guarantee Canaan Oil Company's outstanding debt to ARCO, and that, in consideration of such agreement, ARCO entered into distribution contracts with the defendant. ARCO brought the present action upon the defendant's subsequent refusal to pay Canaan Oil Company's debt. The defendant counterclaimed that by demanding more than the distributor price for fuel, and by withdrawing the defendant's line of credit, ARCO had breached its contract, harassed the defendant, intentionally interfered with its business, furthered a conspiracy to so interfere and committed violations of our state antitrust and unfair trade practices statutes.

## I

We first dispose of the defendant's claims on appeal.

## A

The defendant claims initially that the trial court failed to instruct the jury that ARCO had the burden of proving its special defenses to the counterclaim. To the counterclaim counts of breach of contract, harass-

ment, intentional interference with business and unfair trade practices, the plaintiff pleaded as a special defense that "[w]hatever actions were taken by [the] plaintiff were legitimate, lawful and proper actions in the assertion of its legitimate business and contractual rights and interests and, accordingly, are not actionable." To all but the first count, the plaintiff also pleaded that the statute of limitations barred such claims.

A party may properly be assigned the burden of proving the facts that he affirmatively asserts to be true. *Coogan* v. *Lynch,* 88 Conn. 114, 116, 89 A. 906 (1914). A party who pleads a special defense " 'presumably does so with the idea of making his defense appear to be stronger and more aggressive, and invites the court to charge that he has assumed the affirmative upon that particular issue . . . . ' *Coogan* v. *Lynch,* [supra]." *Rix* v. *Stone,* 115 Conn. 658, 664, 163 A. 258 (1932).

In the present case the court appears to have applied this principle by instructing the jury as follows: "Now, with respect to the material allegations of the complaint and special defenses to the counterclaim, which have not been admitted in the answer or reply of the defendant's, the plaintiff has the burden of proving them." At a later point in the charge the court gave a similar instruction imposing the burden of proof on the plaintiff: "In this case, it is not incumbent upon the defendant to disprove the essential elements of the plaintiff's cause of action or special defenses to the counterclaim, but on the contrary the burden of proof is on the plaintiff . . . . " In its brief the defendant refers to two additional instructions on the burden of proof that are inconsistent with those we have recited. In excepting to the charge as given, however, the defendant's counsel failed to point out specifically these inconsistent instructions, declaring vaguely that he was "not so certain" that the court had allocated the burden of proof to the plaintiff. This imprecise reference did not rea-

sonably alert the court to the deficiencies in the charge now advanced. Counsel thus failed to "state distinctly the matter objected to and the ground of objection" as required by Practice Book § 315 for appellate review. The contention of the defendant, therefore, warrants no further consideration.

B

The defendant next challenges the trial court's instructions on its CUTPA claim. Embodying the core proscription of General Statutes §§ 42-110a through 42-110q, the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110b (a) states: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Claiming that the trial court's jury charge with respect to its CUTPA claim was "too limiting," the defendant refers to that portion of the instruction in which the court read to the jury § 42-110b (a) and then stated: "It would appear that if any one or more of the acts alleged in [the CUTPA count] of the counterclaim were immoral, unethical, oppressive or unscrupulous and caused substantial harm to the defendant, that act or those acts would be violative of § 42-110b."

The ground of the defendant's objection to the above instruction at trial was that a violation of CUTPA "is not merely limited to the four examples which your Honor gave [i.e., immoral, unethical, oppressive or unscrupulous acts], but rather . . . these unfair trade practices are to be governed by the cases and common law as developed by the federal statutes and the cases underneath them." Counsel for the defendant focused his oral argument on this claim upon a discussion of the similar theme that "[i]t's more than merely oppressive, immoral, unethical conduct, but it includes that

which is unfair and deceptive. And [the court] didn't really charge on unfair and deceptive."

General Statutes § 42-110b (b) states: "It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. 45 (a) (1)), as from time to time amended." "We followed this mandate recently, and adopted the criteria set out in the 'cigarette rule' by the federal trade commission for determining when a practice is unfair: '(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].' *Conaway* v. *Prestia,* [191 Conn. 484, 492–93, 464 A.2d 847 (1983)], quoting *FTC* v. *Sperry & Hutchinson Co.,* 405 U.S. 233, 244–45 n.5, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972)." *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* 192 Conn. 558, 567–68, 473 A.2d 1185 (1984); see Statement of Basis and Purpose of Trade Regulation Rule 408, "Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking," 29 Fed. Reg. 8324, 8355 (1964).

Contrary to the claim of the defendant, the trial court's jury charge did refer adequately to the criteria developed under the federal unfair trade practices legislation. The factors "immoral, unethical, oppressive, or unscrupulous," comprise one of the federal criteria for determining when a practice is unfair. The defendant's further contention that the jury charge omitted refer-

ence to a practice "which is unfair and deceptive" also lacks merit, because the court both read to the jury § 42-110b (a), which proscribes "unfair or deceptive acts," and delineated many of the more specific considerations necessary to a determination of statutory unfairness. "The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. *Borsoi* v. *Sparico,* 141 Conn. 366, 371, 106 A.2d 170 [1954]. Since the charge was sufficiently correct in law, adapted to the issues and ample for the guidance of the jury, it met the required test." *DeCarufel* v. *Colonial Trust Co.,* 143 Conn. 18, 20–21, 118 A.2d 798 (1955); see also *State* v. *Marra,* 195 Conn. 421, 443, 489 A.2d 350 (1985); *Nichols* v. *Coppola Motors, Inc.,* 178 Conn. 335, 346, 422 A.2d 260 (1979).

Apart from withstanding the limited force of the defendant's exception at trial, the court's jury instructions on CUTPA also covered the substance of the defendant's generalized request to charge, which, in relevant part, was as follows: "(a) [CUTPA] prohibits unfair or deceptive practices in a trade or commerce causing a loss to a party; (b) If you find by a fair preponderance of the evidence that ARCO's conduct in dealing with its distributor, Waterbury Petroleum, was unfair or deceptive and not a proper business practice, then you shall return a verdict in favor of Waterbury Petroleum . . . and should you find otherwise, your verdict shall be in favor of ARCO." "Our courts have long recognized that a request of the type made here 'hinders rather than helps' the trial court in determining whether a particular instruction should be given." *State* v. *McIntosh,* 199 Conn. 155, 161, 506 A.2d 104 (1986). Under Practice Book § 316, "[a]ny party intending to claim the benefit of . . . any specific statute

shall file a written request to charge on the legal principle involved." "The phrase 'on the legal principle involved' requires more than a mere reference to, or quotation of, the statute coupled with a statement that its violation . . . in a situation governed by it" would necessitate a particular verdict. *Lowell* v. *Daly,* 148 Conn. 266, 269–70, 169 A.2d 888 (1961). Rather, § 316 "calls for a request explaining the meaning and interpretation of the statute in the light of the claims of proof in the case." Id., 270. Having failed to provide such an explanation, the defendant cannot prevail in its attack upon the generality of the language used in the charge.

Because the defendant's objection to the jury charge on CUTPA was solely upon the ground we have rejected, that it failed to include adequate references to the terminology "unfair or deceptive" and to federal applications of such terminology, we need not consider whether other aspects of the charge were defective. See *Moore* v. *McNamara,* 201 Conn. 16, 30, 513 A.2d 660 (1986). Practice Book § 3063 (now § 4185) clearly relieves this court of any obligation to consider a claim "not distinctly raised at trial."[1] *State* v. *Rogers,* 199 Conn. 453, 461, 508 A.2d 11 (1986). At no time dur-

---

[1] Practice Book § 3063 provided: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court." The present case was tried in 1982. Although it was not until 1983 in the case of *Conaway* v. *Prestia,* 191 Conn. 484, 464 A.2d 847 (1983), that this court first had occasion to recognize the cigarette rule, the delineation of the rule at the federal level preceded the trial by several years. See *FTC* v. *Sperry & Hutchinson Co.,* 405 U.S. 233, 244–45 n.5, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972); Statement of Basis and Purpose of Trade Regulation Rule 408, "Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking," 29 Fed. Reg. 8324, 8355 (1964). Thus we do not consider the defendant's claim regarding the rule raised for the first time on appeal to be one that "arose subsequent to the trial" under § 3063.

ing the trial did the defendant alert the court to the precise claim raised in its brief on appeal that satisfying any one of the three criteria set out in the cigarette rule would constitute a violation of CUTPA, whereas the court "charged that a practice would *both* have to be immoral, unethical, oppressive or unscrupulous *and* cause substantial harm to [the defendant]." (Emphasis in original.) "That the defendant objected does not change this principle. The defendant's failure to raise distinctly in the trial court the grounds upon which he now relies effectively deprived the trial court of the opportunity to consider the matter in the first instance." *State* v. *Rogers,* supra, 462.

It is true that this court has acknowledged the statement of the Federal Trade Commission (FTC) that all three criteria set out in the cigarette rule " 'do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.' " *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* supra, 569 n.15, quoting Statement of Basis and Purpose, "Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures," 43 Fed. Reg. 59,614, 59,635 (1978). We note, however, that the phrase "or because to a lesser extent it meets all three" suggests that conjunctive linkage may be appropriate in certain cases. Further, in his article, "The Meaning of 'Unfair Acts or Practices' in Section 5 of the Federal Trade Commission Act," 70 Geo. L.J. 225, 285 (1981), Neil Averitt, a member of the planning staff of the commission's bureau of competition, summarized that under the cigarette rule "[t]he propriety of commercial conduct was to be judged by considering whether it (1) caused substantial consumer injury; (2) violated established public policy; *and* (3) was immoral or unscrupulous." (Emphasis added.) Moreover, in 1980 the commission "reviewed

those factors and concluded that '[u]njustified consumer injury is the primary focus of the FTC Act, and the most important of the three . . . criteria.' '' D. Rice, "Consumer Unfairness at the FTC: Misadventures in Law and Economics," 52 Geo. Wash. L. Rev. 1, 4 (1983), quoting letter from FTC commissioners, December 17, 1980. "[T]he Commission explained that regulation is permissible only if a practice causes [unjustified] injury that is substantial . . . ." Id. Because "unjustified injury" may reasonably be seen, with no great sacrifice of lexicographic integrity, as flowing from conduct that is "immoral, unethical, oppressive or unscrupulous," the trial court's jury charge in the present case appears consistent with some of the current federal definitions of "unfair" acts or practices. Cf. *A.F.M. Corporation* v. *Corporate Aircraft Management,* 626 F. Sup. 1533, 1549–51 (D. Mass. 1985); but see *Puretest Ice Cream, Inc.* v. *Kraft, Inc.,* 614 F. Sup. 994, 996 (D. Mass. 1985).

This court may in the interests of justice notice plain error not brought to the attention of the trial court. Practice Book § 4185; *Brookfield* v. *Candlewood Shores Estates, Inc.,* 201 Conn. 1, 14 n.9, 513 A.2d 1218 (1986). In light of the foregoing, and because, in any event, the defendant points to nothing in the record to support a conclusion that the jury likely found it had satisfied even one of the relevant tests for proving a violation under CUTPA, we fail to perceive any manifest injustice to the defendant resulting from the trial court's charge that would warrant our application of the plain error doctrine. See *State* v. *Utz,* 201 Conn. 190, 202, 513 A.2d 1191 (1986).

C

The defendant next claims that the court erroneously limited the jury's consideration to acts occurring "after June 1, 1976," approximately three years before the

defendant filed its counterclaim. The defendant points to the six year limitation upon actions for breach of written contracts prescribed by General Statutes § 52-576, and to this court's interpretation in *Handler* v. *Remington Arms Co.,* 144 Conn. 316, 130 A.2d 793 (1957), of a predecessor statute to General Statutes § 52-577, which provided that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." In *Handler* v. *Remington Arms Co.,* supra, 321, we held that "[w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed."

Our review of the trial transcripts indicates that, in response to the plaintiff's special defense, the court imposed the June 1, 1976 cutoff date referred to by the defendant only with respect to its CUTPA claim. Because General Statutes § 42-110g (f) prescribes a three year limitation upon actions claiming a violation of CUTPA, the defendant's reliance on any other statute of limitations is unfounded.

## D

A further contention of the defendant is essentially that federal energy regulations and federal court decisions ought to have been admitted in evidence for the purpose of aiding in the interpretation of the parties' contract and guiding the determination of whether unfair trade practices had been committed. It is a basic principle that a complainant may prevail only upon the grounds of recovery that he has alleged. *Matthews* v. *F.M.C. Corporation,* 190 Conn. 700, 705, 462 A.2d 376 (1983); see also *Lamb* v. *Burns,* 202 Conn. 158, 172, 520 A.2d 190 (1987). The defendant's counts alleging ARCO's breach of contract and unfair trade practices incorporated claims that ARCO had breached its obligations under "federal guidelines" and "standards

established by the federal government."[2] At trial the court ruled that "the claims concerning violations under federal regulations are exclusively in the jurisdiction of the federal courts," and subsequently ordered the deletion of any references in the counterclaim to such violations.

The federal violations alleged by the defendant concerned regulations promulgated pursuant to the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. §§ 751 through 760h, Pub. L. No. 93-159, 81 Stat. 628 (1973), and the Economic Stabilization Act of 1970 as amended, Pub. L. No. 92-210, 85 Stat. 743 (1971). Section 211 (a) of the latter act, incorporated by reference in the former act; 15 U.S.C. § 754 (a) (1) (A); provides in part: "The district courts of the United States shall have exclusive original jurisdiction of cases and controversies arising under this title, or under regulations or orders issued thereunder, notwithstanding the amount in controversy . . . . " See *Society of New York Hospital* v. *Associated Hospital Service*, 367 F.

---

[2] Paragraph six of the defendant's first count of its counterclaim, incorporated by reference into all other counts, contained in the defendant's third amended answer, read as follows:

"6. Despite Waterbury Petroleum's readiness and willingness to perform the terms of said Agreements, ARCO, during the period August 1975 to the present, has breached the terms of said Agreements in several respects, all to Waterbury Petroleum's loss and damage in that ARCO:

"(a) Contrary to regular business practice and contrary to the standards established by the federal government, required all motor gasoline to be sold and delivered to Waterbury Petroleum in ARCO's trucks and at much greater costs than the contract price. Federal government standards contravened were those set forth at 10 CFR §§ 210.61, 210.62, and 210.63.

"(b) Contrary to regular business practice of ARCO and contrary to the federal guidelines, required each payment for oil and gasoline to be made by certified check, not even accepting ARCO credit card charge slips. Federal guidelines contravened were those set forth at 10 CFR §§ 210.61, 210.62, and 210.63.

"(c) Contrary to federal guidelines, ARCO unilaterally increased the purchase price of gasoline by 2.5 cents over the distributor price, all to Waterbury Petroleum's loss. Federal guidelines contravened were those set forth at 10 CFR §§ 210.61, 210.62, and 210.63."

Sup. 149, 151 n.2 (S.D.N.Y. 1973); *Prairie States Petroleum Co.* v. *Universal Oil Sales Corporation,* 88 Ill. App. 3d 753, 757, 410 N.E.2d 1008 (1980). It is clear that the trial court thus properly concluded from the express language of § 211 (a) that, insofar as the violations alleged in the counterclaim of "federal guidelines" and "standards established by the federal government" are concerned, the federal government has preempted the field and has made the jurisdiction of the federal courts of matters arising under the foregoing acts exclusive. The trial court therefore cannot be said to have erred in refusing to consider the federal claims set forth in the defendant's counterclaims. Cf. *Ellis* v. *Illinois Commerce Commission,* 44 Ill. 2d 438, 443, 255 N.E.2d 417 (1970).

The defendant's related contention is that the court erred in denying its request that judicial notice be taken of the federal regulations enumerated in its counterclaim. Federal statutes and the regulations issued thereunder may be judicially noticed. *Powers* v. *Powers,* 186 Conn. 8, 10, 438 A.2d 846 (1982); *Theron Ford Co.* v. *Home Owners' Loan Corporation,* 120 Conn. 250, 252, 180 A. 448 (1935). The doctrine of judicial notice, however, "does not obviate the necessity for the proper framing of issues, whether of fact or of law." *Fagan* v. *Bridgeport,* 13 Conn. Sup. 75, 78 (1944). "Facts cannot be proven by evidence or established by judicial notice until and unless they are properly pleaded . . . ." *Frasca* v. *Basile,* 27 Conn. Sup. 292, 294, 236 A.2d 925 (1967).

With respect to the defendant's contract claim, the court addressed the defendant thus: "It is abundantly clear that all you allege here is that the federal guidelines had been violated. You do not in any way say it violated any of the terms of the contract itself, neither the contract of August 22, 1975, nor any other contract." We agree with this analysis of the defendant's

pleading. The court consequently ruled correctly against taking judicial notice of the federal regulations as they pertained to the contract claim.

Turning to the CUTPA claim, we note preliminarily that, because General Statutes § 42-110b (b) prescribes that courts of this state shall be guided in construing CUTPA by federal interpretations of the Federal Trade Commission Act, such use of these interpretations in CUTPA litigation ought not be problematic. Indeed, the language used by the trial court in its jury charge regarding CUTPA, as stated above, indicated a proper reliance on federal constructions of the phrase "unfair acts or practices." The defendant, however, requested judicial notice of regulations promulgated under other federal legislation that, as pleaded, could only have provided a basis for the direct adjudication of federal claims. Thus, the trial court properly refused to notice judicially the federal regulations presented by the defendant.

## E

The defendant's final claim[3] is that the court erred in precluding it from calling the plaintiff's trial coun-

---

[3] In its brief on appeal, the defendant has intertwined certain stray contentions of which we summarily dispose. First, the defendant claims that the court erroneously precluded it from introducing evidence of its trade classification. The record reveals, however, that the court in fact overruled the plaintiff's objection to such introduction and allowed questioning regarding the distinction between a "distributor" and a "contract dealer." Second, the defendant asserts that the court erroneously "ordered the antitrust act out of the case for all purposes, even the allegations of the CUTPA count." See General Statutes §§ 35-24 through 35-49. Because the defendant does not allege it was precluded from introducing evidence of the plaintiff's actual conduct that might have constituted an antitrust as well as a CUTPA violation, we fail to perceive any prejudice to the defendant in pursuing its CUTPA or contract claims from this ruling.

The defendant further objects to the court's instruction to the jury that "you are to dismiss . . . from your mind any references of claims that were filed by Waterbury Petroleum against [ARCO] before the Federal Regulatory Agency . . . ." See *Atlantic Richfield Co.* v. *Department of*

sel to the stand to testify regarding an alleged conspiracy between the plaintiff and a competitor of the defendant. Under Disciplinary Rule 5-102 (B) of the Code of Professional Responsibility, a lawyer who may be called as a witness other than on behalf of his client may continue the representation only "until it is apparent that his testimony is or may be prejudicial to his client."[4] "If by merely announcing his intention to call opposing counsel as a witness an adversary could thereby orchestrate that counsel's disqualification under the Disciplinary Rules, such 'a device' might often be employed as a purely tactical maneuver. Clearly, however, these Rules were not designed to be used as tools of litigation strategy. Therefore, whenever an adversary declares his intent to call opposing counsel as a witness, prior to ordering disqualification of counsel, the court should determine whether coun-

---

*Energy,* 655 F.2d 227 (Temp. Emer. Ct. App. 1981). The court, in its discretion, may conditionally admit evidence upon representations that its relevancy will later be established. *Steiber v. Bridgeport,* 145 Conn. 363, 366–67, 143 A.2d 434 (1958); C. Tait & J. LaPlante, Handbook of Connecticut Evidence (1976) § 3.4 (d). At trial, the court did admit evidence offered by the defendant of the defendant's own action in filing a federal claim, because it might possibly have proved relevant with respect to ARCO's "motivation for harassment, for unfair business practices . . . ." The court did not abuse its discretion in subsequently precluding consideration of such evidence, perhaps on the ground that its potential for creating confusion of the issues outweighed any probative value it might have had.

Finally, we decline to consider the defendant's cryptic claim that the court erroneously instructed the jury that as a matter of law the defendant had released a 1969 agreement with ARCO. When the court, during the trial, anticipated it would so instruct the jury "at the appropriate time," counsel for the defendant indicated his intention to take an exception. After the charge had been delivered, however, the defendant did not take any exception to that portion of the charge.

[4] See *Galarowicz v. Ward,* 119 Utah 611, 620, 230 P.2d 576 (1951), stating: "Apparently, the object of this precept is to avoid putting a lawyer in the obviously embarrassing predicament of testifying and then having to argue the credibility and effect of his own testimony. It was not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him as counsel."

sel's testimony is, in fact, genuinely needed." *Connell v. Clairol, Inc.,* 440 F. Sup. 17, 18 n.1 (N.D. Ga. 1977). The trial court in the present case based its decision on such a determination. Finding that the defendant had produced evidence neither of the participation of the plaintiff's counsel in any aspect of a conspiracy nor of a conspiracy at all, the court rejected the defendant's request as furthering nothing more than a "fishing expedition." We conclude that the court correctly required independent evidence of the alleged conspiracy as a requisite to the determination of "whether counsel's testimony is, in fact, genuinely needed." It is elemental that fishing expeditions cannot provide a basis for the disqualification of opposing counsel.

## II

In the cross appeal ARCO claims that the court erred: (1) in directing a verdict in favor of the defendant on the claim that the latter had guaranteed the indebtedness of the Canaan companies; (2) in refusing to impose sanctions on the defendant for its noncompliance with the plaintiff's discovery requests; (3) in refusing to strike the defendant's counterclaim for improper joinder; and (4) in striking certain of the plaintiff's defenses to the counterclaim. Because the plaintiff failed to file a motion to set aside the verdict, we shall not provide a full review of its claims of error.

Practice Book § 320 provides in part that "motions to set aside a verdict . . . must be filed with the clerk within five days after the day the verdict is accepted or judgment rendered . . . ." General Statutes § 52-228b provides in part that "[n]o verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of the court." "The evident purpose of

[§ 52-228b] is to provide an opportunity for the trial court to pass upon claims of error which may become the subject of appeal. This procedure is not a mere superfluity with respect to rulings made at trial . . . . To require a written motion to set aside a verdict as a prerequisite to consideration on appeal of trial rulings assigned as error . . . also serves to implement our policy against review of questions not distinctly raised in the trial court. Practice Book § 3063 [now § 4185]." *Pietrorazio* v. *Santopietro,* 185 Conn. 510, 514–15, 441 A.2d 163 (1981). Accordingly, we are limited in our consideration of the issues raised in this cross appeal to ascertaining whether there has been "plain error." Practice Book § 3063 (now § 4185); *Pietrorazio* v. *Santopietro,* supra, 515.

We fail to discern plain error in any of the trial court's rulings challenged by the plaintiff. The court granted the defendant's motion for a directed verdict regarding the claim of its guarantee of the Canaan companies' indebtedness because the plaintiff had not produced sufficient evidence that it had met a condition precedent to the guarantee. The agreement of August 14, 1975, between Canaan Oil Company and the defendant, which contained the terms of such guarantee, was expressly conditional upon ARCO's assent to Canaan's assignment to the defendant of its "authorized distributor agreement," and upon ARCO's further assent "to an extension of two (2) years of said agreement from April 30, 1976." Because distributor agreements between the defendant and ARCO were renewed only for one year terms in August, 1976, and again in 1977, whereas a reasonable interpretation of the contract language may have been that the two year extension had to be in effect by April 30, 1976, the court's direction of a verdict did not constitute plain error.

The permissive language of Practice Book § 231 allows the trial court broad discretion in deciding whether to impose sanctions on a party for failure to comply with discovery requests. That the discovery requests at issue involved the defendant's claimed damages is dispositive of the plaintiff's second contention that the court erred in its refusal to impose sanctions. Apart from the merits of the request for such sanctions, it would be ludicrous to contend that this refusal could have resulted in any manifest injustice to the plaintiff, when the jury's verdict in favor of the plaintiff on the counterclaim removed the defendant's claimed damages from the case.

Neither do we find plain error in the decision of the trial court, *Aspell, J.,* that the defendant's counterclaim arose out of the transactions that comprised the subject of the plaintiff's complaint and thus had been properly joined. Practice Book § 116 provides in relevant part that "[i]n any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint. . . . " Section 116 "is a common-sense rule designed to permit the joinder of closely related claims where such joinder is in the best interests of judicial economy." *Jackson* v. *Conland,* 171 Conn. 161, 166, 368 A.2d 3 (1976). Because the plaintiff's complaint and the defendant's counterclaim alleged breaches of the same contract, it was certainly not plainly erroneous for the trial court to find a relation between the two actions close enough to warrant joinder.

Finally, the plaintiff claims error in the ruling of the trial court, *Mulcahy, J.,* granting the defendant's motion to strike its special defenses alleging that the defendant was barred by the principles of collateral estoppel and res judicata from relitigating certain

claims brought by the defendant in previous actions against third parties. The plaintiff does not dispute the court's finding that "ARCO [was] neither a party to any of the other actions nor . . . in privity with any of the parties to those law suits." "A final judgment on the merits is conclusive on the parties in an action and their privies as to the cause of action involved . . . . Collateral estoppel is that aspect of res judicata which is concerned with the effect of a final judgment on the subsequent litigation of a different cause of action involving some of the issues determined in a former action between the parties." *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 317, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973); *Doran* v. *Doran,* 3 Conn. App. 277, 280, 487 A.2d 1106 (1985). It was clearly not plain error for the court to adhere to established precedent. We find no error on the cross appeal.

There is no error.

In this opinion the other justices concurred.