[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE (No. 129)
Lafayette Bank Trust Co. ("plaintiff") alleges the following in its complaint. The plaintiff holds two notes signed by John Jarvis, Robert Rowan, Peter Penczer and Martin Ryan ("defendants"). One note is for $3,200,000.00 and the other is for $500,000.00. The note for $3,200,000.00 was secured by a mortgage on real property while the $500,000.00 note was unsecured. Defendants defaulted on both notes, and plaintiff moved to foreclose the mortgage and declare both notes due. The plaintiff obtained a prejudgment remedy attachment of real property owned by one of the defendants in the amount of $4,000,000.00.
The defendants filed an answer, special defenses, setoff and counterclaim. The second, third and fourth counts of the counterclaim allege, respectively, an abuse of process claim, a CUTPA violation, and a breach of an implied covenant of good faith and fair dealing. Plaintiff filed a motion to strike the first special defense and the second, third and fourth counts of the counterclaim. The motion to strike the first special defense was granted from the bench leaving the second, third and fourth counts of the counterclaim to be resolved.
A motion to strike admits all well pleaded facts, and such facts are construed most favorably to the pleader. Mozzochi v. Beck, 204 Conn. 490, 491 (1987). If facts provable under the allegations support a cause of action, then the motion to strike must be denied. Alarm Applications Co. v. Simsbury Volunteer Fire Co., 179 Conn. 541, 545 (1980). "In judging a motion to strike. . .it is of no moment that plaintiff may not be able to prove its allegations at trial." Levine v. Bess Paul Sigel Hebrew Academy of Greater Hartford, Inc., 39 Conn. Sup. 129,132 Super. Ct. 1983).
I. THE ABUSE OF PROCESS CLAIM CT Page 7803
Defendants, in the second count of their counterclaim, allege that there was an agreement to forbear litigation and interest payments as well as to accept a deed and other consideration in lieu of foreclosure. Defendants allege a breach of this agreement. Defendants also allege that defendants' note for $3,200,000.00 was secured by property "with a value of that same amount" and that "the balance due on the $500,000.00 note was not substantially due in excess of said sum. They allege that the $4,000,000.00 attachment of one of the defendant's properties amounted to abuse of process under these circumstances.
The Connecticut Supreme Court has stated that "[a]n action for abuse of process lies against any person for using `a legal process in an improper manner or to accomplish a purpose for which it was not designed.'" Mozzochi, 204 Conn. at 494, quoting Varga v. Pareles, 137 Conn. 663, 667 (1951).
Plaintiff argues that it has not used the prejudgment remedy of attachment to accomplish a purpose for which it was not designed because the statute was designed to "secure the appearance of the defendant and to furnish security for any judgment plaintiff may receive", and this is how the plaintiff has utilized the statute.
If defendant proves that the action was brought in violation of an enforceable forbearance agreement, the purpose of the process would be improper. The allegations are, therefore, legally sufficient.
II. THE CUTPA CLAIM
Plaintiff argues that the third count of the counterclaim should be stricken because the Connecticut Unfair Trade Practices Act ("CUTPA") does not apply to banks, or at least to this particular transaction. Defendants argue that CUTPA applies both to banks and this particular transaction.
Although there is a split of authority in the superior courts as to whether or not CUTPA applies to the activities of banks, "a significant majority of superior court decisions, however, have determined that CUTPA is applicable to banks." Economic Development v. City Trust, 3 Conn. L. Rptr. 16, 517, 520 (April 15, 1991, Dranginis, J.). Economic Development did not hold, as some decisions have, that CUTPA applies to all banking activities. "When a bank is engaged in consumer-oriented activities, CUTPA should apply." Id.
In Caldor, Inc. v. Heslib, 215 Conn. 590, 598 (1990), the court had to determine the validity of a regulation CT Page 7804 promulgated by the Commissioner of Consumer Protection. At page 598 the court said: "Likewise, although 42-110b(b) provides that the court and the [commissioner] shall be guided by the federal interpretations given 5 of the Federal Trade Commission Act, they are not limited by such interpretations." (Emphasis in original.) The court goes on, at page 598, to quote approvingly from Bailey Employment System, Inc. v. Hahn,545 F. Sup. 62, 71 (D.Conn. 1982).
 "`As originally enacted, [CUTPA] provided that state unfair or deceptive acts or practices were to be those determined to be unfair or deceptive by the [Federal Trade Commission] or the federal courts. 1973 Pub. Acts 615, 2(a). However, the Act was amended in 1976 to provide only that courts in Connecticut [and the commissioner] were to be guided by federal interpretations of 5 of the [Federal Trade Commission Act]. The purpose of the change apparently was to permit. . .practices which had not yet been specifically declared unlawful by federal authorities to be nevertheless unlawful under CUTPA.' (Emphasis added.)"
The Federal Trade Commission Act expressly exempts banks from coverage. See 15 U.S.C. § 45 (a)(2). The Connecticut Legislature chose not to expressly exempt banks.
Plaintiff argues that the exception under Connecticut General Statutes 42-110c exempts banking activities. That section provides in relevant part:
 "EXCEPTIONS. (a) Nothing in this chapter shall apply to:
 (1) Transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States. . . ."
Plaintiff claims that banks are governed by a myriad of state and federal laws and regulations and the reasoning of Connelly v. Housing Authority, 213 Conn. 354 (1990) should apply. That case exempted the New Haven Housing Authority from the application of CUTPA in ". . .the continued leasing or renting of subsidized apartments to low income tenants." Id., p. 361. The court noted in footnote seven on the same page that there was no claim that defendants intentionally deprived the tenants CT Page 7805 of heat or hot water. The claim in Connolly resulted from faulty plumbing and boilers.
In the instant case the CUTPA count alleges breach of an agreement to forbear from suit. Bringing the lawsuit, in violation of the alleged agreement, was an intentional act, and whether it is a CUTPA violation must be determined by the three part test of Sanghavi v. Paul Revere Life Ins. Co., 214 Conn. 303,311-312 (1990) (citations omitted):
 (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers.
Further, "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." Atlantic Richfield Co. v. Canaan Oil Co., 202 Conn. 234, 22 (1987) quoting McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 569 n. 15 (1984).
In Connolly the court pointed out at page 362:
 The state statute and the federal regulations set forth in great detail the municipal landlord's responsibilities and provide carefully balanced procedural and substantive remedies for public housing tenants in a variety of situations.
Connecticut General Statutes 8-60 (e), for example, provides for services to be furnished to housing tenants. Said services would include heat and hot water.
It is not necessary for the court to determine whether CUTPA applies to all banking activities. The actions alleged here (breach of a forebearance agreement) have not been shown to be the subject of pervasive state or federal law or regulations. Defendants allege that they entered into an agreement with the plaintiff on April 18, 1990 that would allow defendants to defer interest payments. Defendants further allege that this agreement would allow the defendants to convey certain property to the plaintiff in satisfaction of the $3,200,000.00 note and CT Page 7806 that the plaintiff would accept other security for the $500,000.00 unsecured note. On May 10, 1990, the plaintiff instituted this foreclosure action despite the alleged agreement. The alleged conduct falls within the three part test of Sanghavi, supra, and the application of that test stated in Atlantic Richfield, supra.
III. IMPLIED COVENANTS
Plaintiff also seeks to strike the fourth count of the counterclaim based on a claim of breach of an implied covenant of good faith and fair dealing. Plaintiff argues that Connecticut does not recognize such a cause of action. Defendants argue that, while Connecticut has not explicitly recognized the implied covenant of good faith and fair dealing, Connecticut courts have not rejected the notion either.
The court in Sorvillo v. Strother, 2 CSCR 1095 (Oct. 1, 1987, Leuba, J.) stated that "[t]here is no logical reason why good faith and fair dealing should be excluded from contractual arrangements involving mortgages." Plaintiff argues that Sorvillo did not deal with a relationship between a borrower and a bank, but dealt with a purchase money mortgage and is, therefore, not valid precedent for the present case. Plaintiff argues in its memorandum that recognizing the existence of the implied covenant of good faith and fair dealing "would give a license to the borrower to default on its obligations with impunity and strip the lender of remedies for which it bargained. Banks cannot lend money if they cannot avail themselves of legal process to collect from defaulting borrowers."
First, the counterclaim does not prevent plaintiff from proceeding with the foreclosure. It simply makes it liable for money damages if plaintiff did in fact breach an implied covenant of good faith and fair dealing. Second, the implied covenant defendants here claim is that the plaintiff has excessively attached their property in breach of an agreement wherein defendants would have conveyed property in lieu of payment on the $3,200,000.00 note. Recognizing the implied covenant of good faith and fair dealing will not prevent banks from proceeding with their contractual remedies, i.e., foreclosing on defaulting borrowers; it will only make them liable if they have acted improperly.
The motion to strike the second, third and fourth counts of the counterclaim is denied.
E. EUGENE SPEAR, JUDGE. CT Page 7807