# STATE OF CONNECTICUT *v.* DOMENICK VALLEJO
## (AC 27271)

Flynn, C. J., and DiPentima and Hennessy, Js.

Argued February 2—officially released July 24, 2007

*Christopher M. Neary*, special public defender, for the appellant (defendant).

*Sarah Hanna*, special deputy assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *David R. Shannon*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Domenick Vallejo, appeals from the judgments of conviction, rendered after a jury trial, of numerous criminal offenses stemming from separate informations.[1] On appeal, the defendant claims that the trial court improperly (1) granted the state's motion for joinder of two separate cases

---

[1] Specifically, the defendant was convicted of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1), possession of a weapon in a motor vehicle in violation of General Statutes § 29-38, two counts of criminal possession of a firearm in violation of General Statutes § 53a-217, possession of marijuana in violation of General Statutes § 21a-279 (c) and possession of a controlled substance with intent to sell in violation of General Statutes § 21a-277 (b).

against him and (2) denied his motion to suppress evidence. We disagree and affirm the judgments of the trial court.

The defendant was charged in connection with two separate incidents. The first occurred on May 8, 2002, although several months prior to that, the victim and the defendant were involved in a road rage incident that culminated in both of them leaving the road to fight. The fight never occurred, however, because police officers drove by the scene, and the defendant departed. No criminal charges resulted. On May 8, 2002, however, the victim encountered the defendant again. This time, as the victim was stopped at the traffic signal at the end of an exit ramp in Danbury, the defendant drove his car along the right side of the victim's car. The defendant got the victim's attention and referenced the road rage incident that occurred several weeks prior. It was at this time that the victim saw that the defendant was holding a gun. When the signal turned green, the defendant started shooting as the victim tried to drive away. The defendant fired the gun at least three times. The gunshots hit a front tire, a back tire and the leaf spring of the victim's car. In connection with these events, the state charged the defendant with attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1), criminal possession of a firearm in violation of General Statutes § 53a-217 and possession of a weapon in a motor vehicle in violation of General Statutes § 29-38.

In the second incident, on November 12, 2002, an off duty Danbury police officer, Kevin Zaloski, saw the defendant, with a friend, inside a Blockbuster video store. Zaloski recognized the defendant and called the police station to verify that there were warrants for his arrest. After the existence of the warrants was verified and additional officers were dispatched to the store, the defendant was arrested. During the search of the

defendant incident to his arrest, the police officers found a bag of marijuana, an electronic scale, a large amount of cash in his wallet and a set of car keys. When the police officers informed the defendant's friend, Patricia Rodriguez, that she was free to leave, she told the officers that her purse was still in the vehicle. Detective James Fisher asked the defendant for permission to retrieve the purse and to search the vehicle. The defendant gave the police officers limited permission to go into the vehicle to retrieve the purse, but he claimed that he could not give them permission to search the vehicle because the vehicle belonged not to him but to a friend. When Fisher and Rodriguez retrieved the purse from the car, Fisher also took the registration from the vehicle to determine the owner of the vehicle. Once Fisher determined that Amy DeLoughy was the registered owner of the vehicle, he attempted to contact her to obtain her consent to search the vehicle. Fisher sent another officer to DeLoughy's place of employment and to her residence. That officer was unable to locate DeLoughy, but obtained a cellular telephone number and left several messages. After exhausting his attempts to locate DeLoughy, Fisher decided to bring the vehicle back to the police department as he awaited consent to search. Because tow trucks were busy with other vehicles, Fisher directed Officer James Hicks to drive the car to the police department. When Hicks stepped into the vehicle, he stepped onto a gun that was on the driver's side floor.

The state charged the defendant with criminal possession of a firearm in violation of § 53a-217, possession of a weapon in a motor vehicle in violation of § 29-38, possession of marijuana in violation of General Statutes § 21a-279 (c) and possession of a controlled substance with intent to sell in violation of General Statutes § 21a-277 (b). On May 30, 2003, the charge of possession of a weapon in a motor vehicle was dismissed.

On April 17, 2003, the defendant filed a motion to suppress all tangible evidence that was seized by the police. On April 26, 2003, the state moved to join the cases on the grounds that the defendant was the sole defendant in both cases, the cases were both of relatively short duration and not complex, several witnesses were the same in both cases and any possible prejudice could be rectified by the court with a curative instruction to the jury. The defendant did not object to the motion for joinder, pending a decision on his motion to suppress. The court granted the state's motion for joinder on May 21, 2003, prior to the start of the jury trial. The jury trial started on May 29, 2003, at which time the defendant requested the court to decide his motion to suppress. The court declined to make a decision at that point, and the defendant did not object to joinder at that time. The defendant's motion to suppress was denied by the court during the trial on May 29, 2003, and the defendant did not object to the joinder at that point.

On June 3, 2003, the jury found the defendant guilty of two counts of criminal possession of a firearm in violation of § 53a-217, possession of marijuana in violation of § 21a-279 (c), possession of a controlled substance with intent to sell in violation of § 21a-277 (b), attempt to commit assault in the first degree in violation of §§ 53a-49 and 53a-59 (a) (1), and possession of a weapon in a motor vehicle in violation of § 29-38. This appeal followed.

I

The defendant first claims that the court improperly granted the state's motion for joinder of all charges against him in a single trial. The state argues that the defendant did not properly preserve, and then abandoned, his claim challenging the court's decision to grant the state's motion for joinder, and, therefore, his

claim is unreviewable. The defendant argues that his waiver was conditional on the court's granting his motion to suppress. We agree with state and, therefore, decline to review this claim.

In declining to review this claim, we reassert the fundamental principle that "if the defendant deems an action of the trial court necessary to the fairness of his trial, he has a responsibility to present such a claim clearly to the trial court so that the trial court may consider it and, if it is meritorious, take appropriate action. That is the basis for the requirement that ordinarily a defendant must raise in the trial court the issues that he intends to raise on appeal." *State* v. *Groomes*, 232 Conn. 455, 466, 656 A.2d 646 (1995).

The following additional facts reveal that the defendant did not properly preserve, and then abandoned, his claim challenging the court's decision to grant the state's motion for joinder. On May 21, 2003, the court heard the state's motion for joinder, and the defendant stated that he had no objection to the joinder, pending the court's decision on his motion to suppress. In addition, the defendant requested that the court rule on his motion to suppress before the start of the trial. At that time, the court granted the motion for joinder subject to its decision on the motion to suppress. On May 29, 2003, the defendant requested that the court rule on the motion to suppress. The court, determining that it was more efficient and appropriate to proceed to the suppression issue during the trial, went forward at that point without a decision on the defendant's motion to suppress. The defendant did not object to the joinder at the time the joint trial began. Later that day, when the court heard testimony on the motion to suppress outside the presence of the jury and denied the motion, the defendant did not object to the joinder. Furthermore, at no point, before or during the trial, did the defendant file a motion for severance. See *State* v.

*Berube,* 256 Conn. 742, 747–48, 775 A.2d 966 (2001) (failure to raise issue of severance at trial, with no indication failure not tactical, renders claim unreviewable). Accordingly, we decline to review the defendant's claim that the court improperly granted the state's motion for joinder.[2]

## II

The defendant also claims that the court improperly denied his motion to suppress. Specifically, he argues that the seizure of the nine millimeter handgun from the vehicle resulted from an illegal search and seizure in violation of the fourth amendment[3] to the United

---

[2] We are unpersuaded by the defendant's attempt to bring this into the ambit of *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The decision to grant or to deny joinder is within the sound discretion of the trial court and will not be disturbed on appeal absent manifest abuse. *State* v. *Swain,* 101 Conn. App. 253, 259, 921 A.2d 712 (2007). Furthermore, the joinder of cases is favored because of efficiency. "[J]oinder expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once." (Internal quotation marks omitted.) Id., 258. Thus, under the circumstances of the present case, in which the defendant did not object to joinder or move for severance, we can see nothing of constitutional magnitude about his claim that the court improperly granted the state's motion for joinder.

The defendant also claims that he should prevail under the plain error doctrine. See Practice Book § 60-5. "[P]lain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Kulmac,* 230 Conn. 43, 77, 644 A.2d 887 (1994). We conclude that in this case, the court did not commit plain error by granting the state's motion for joinder. See *Atlantic Richfield Co.* v. *Canaan Oil Co.,* 202 Conn. 234, 251, 520 A.2d 1008 (1987).

[3] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The fourth amendment has been made applicable to the states via the fourteenth amendment. *State* v. *Eady,* 249 Conn. 431,

States constitution,[4] and, therefore, the court should have granted the motion to suppress the handgun. The state counters that the defendant does not have standing to challenge the search and seizure of the vehicle, that the handgun was discovered pursuant to the police officer's caretaker function and that the gun would have inevitably been discovered. We conclude that even if the officer's initial entry into the vehicle was a violation of the defendant's fourth amendment right to be free from illegal searches and seizures, because the handgun would have been inevitably discovered, the court properly denied the motion to suppress. Prior to discussing the merits of the defendant's claims, however, we first address the state's assertion that the defendant lacks standing to challenge the search of the car and the seizure of the handgun in violation of his fourth amendment rights.

A

The state argues that the defendant did not have standing to assert a fourth amendment violation because he did not have an expectation of privacy in the car in which the handgun was found. We disagree.

As a preliminary matter, we set forth the applicable principles of law that govern our analysis. In order to challenge a search or seizure on fourth amendment grounds, a defendant must show that he has a reasonable expectation of privacy in the place searched. See *Rakas* v. *Illinois*, 439 U.S. 128, 99 S. Ct. 421, 58 L.

---

436, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999).

[4] We analyze the defendant's claim under the federal constitution because he neither briefed a state constitutional claim nor provided independent analysis under a particular provision of the state constitution. See *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992) (defendant must provide independent analysis under particular provision of state constitution); see also *State* v. *Pierre*, 277 Conn. 42, 74 n.12, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006).

Ed. 2d 387 (1978). Absent such an expectation, the subsequent police action has no constitutional ramifications. *State* v. *Mooney*, 218 Conn. 85, 94, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991); *State* v. *Brown*, 198 Conn. 348, 355, 503 A.2d 566 (1986). "In order to meet this rule of standing . . . a two-part subjective/objective test must be satisfied: (1) whether the [person contesting the search] manifested a subjective expectation of privacy with respect to [the invaded premises]; and (2) whether that expectation [is] one that society would consider reasonable. . . . This determination is made on a case-by-case basis. . . . Whether a defendant's actual expectation of privacy . . . is one that society is prepared to recognize as reasonable involves a fact-specific inquiry into all the relevant circumstances. . . . Furthermore, [t]he defendant bears the burden of establishing the facts necessary to demonstrate a basis for standing . . . and the trial court's finding [on the question of standing] will not be overturned unless it is legally or logically inconsistent with the facts found or involves an erroneous rule of law." (Citations omitted; internal quotation marks omitted.) *State* v. *Hill*, 237 Conn. 81, 92–93, 675 A.2d 866 (1996).

The court's finding that the defendant had standing was legally and logically consistent with the facts found. The court expressly credited the defendant's representations that he was in possession of the vehicle, thus establishing an objective expectation of privacy. See *State* v. *Boyd*, 57 Conn. App. 176, 187, 749 A.2d 637 (2000) (objective expectation of privacy stems from place where "society is prepared, because of its code and values and its notions of custom and civility, to give deference to a manifested expectation of privacy" [internal quotation marks omitted]), cert. denied, 253 Conn. 912, 754 A.2d 162 (2000). The court also credited the fact that the defendant gave limited permission to

the police to enter the vehicle for the purpose of allowing Rodriguez to retrieve her handbag, thus establishing a subjective expectation of privacy. See id. (subjective expectation of privacy rests on finding conduct demonstrating intention to keep things private and from knowing exposure to others' view). The court also acknowledged the testimony of Fisher that the defendant had stated that the car did not belong to him and that he did not have the right or the power to give permission to search it. The court found, however, that the defendant was "talking about having ownership of the car, but he doesn't have to own the car to have a subjective expectation of privacy." The court, with the full testimony before it, determined that the defendant had a subjective expectation of privacy as well as an objective expectation of privacy and, accordingly, held that he did have standing to invoke his fourth amendment rights. Because we agree with the court's finding that there was a reasonable expectation of privacy and, therefore, that the defendant had standing, we review the defendant's fourth amendment claims.

## B

The defendant claims that the court improperly denied his motion to suppress because the warrantless search of the vehicle of which he was in possession was unreasonable. Specifically, the defendant argues that the police officers found the handgun when they illegally entered the vehicle, after he had been removed from the scene, on the pretext of securing the vehicle, pending contact with the registered owner. The state argues that even if the police officer's initial entrance into the vehicle was unreasonable, the handgun inevitably would have been discovered through a consent search[5] or through the inventory procedures of the police department.

---

[5] We note that during the hearing on the defendant's motion to suppress the handgun, the court found that the handgun would inevitably have been discovered through the police department procedures for inventory of

"As an initial matter, we note that [o]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Brown*, 279 Conn. 493, 514, 903 A.2d 169 (2006).

It is a basic principle of constitutional law that "[t]he fourth amendment to the United States constitution, made applicable to the states through the fourteenth amendment, prohibits unreasonable searches and seizures by government agents. A warrantless search and seizure is per se unreasonable, subject to a few well-defined exceptions." (Internal quotation marks omitted.) *State* v. *Hedge*, 59 Conn. App. 272, 276–77, 756 A.2d 319 (2000). None of the recognized exceptions to the warrant requirement apply in this case.[6]

The court found the following additional facts in deciding the defendant's motion to suppress. The defendant was placed under arrest on November 12, 2002,

---

impounded vehicles and did not make any findings of fact or conclusions of law regarding the consent of the registered owner. In fact, the court specifically refused to take the consent into consideration. Because we affirm the court's conclusion, we decline to review the alternate grounds for affirmance proffered by the state.

[6] There are four recognized situations in which a warrantless search of a car may lead to the conclusion that such a search was reasonable under the United States or state constitutions. They are that the search was (1) made incident to a lawful arrest; (2) conducted when there was probable cause to believe that the car contained contraband or evidence pertaining to a crime; (3) based on consent; or (4) conducted pursuant to an inventory of the car's contents incident to impounding the car. *State* v. *Reddick*, 189 Conn. 461, 467, 456 A.2d 1191 (1983).

at a Blockbuster video store in Danbury. The police searched the defendant, incident to arrest, and found keys to a car, drugs and drug paraphernalia. Although the defendant denied driving a vehicle to Blockbuster, at some point, while still on the scene, he gave Fisher limited permission to allow Rodriguez, who was with the defendant, to enter the vehicle to retrieve a handbag. It was determined that the vehicle was owned by DeLoughy. The defendant was removed from the scene. Meanwhile, the police tried to contact DeLoughy to determine what to do with the car and to try to obtain consent from her to search it. The police determined that until they were able to locate DeLoughy, they needed to secure the vehicle and that they would do so by bringing the car to the evidence barn at the police department. Unable to find a truck to tow the vehicle, Hicks entered the car to drive it to the barn. Fisher testified at trial that it is routine practice to drive the vehicle to the police department while awaiting consent or a warrant. He also testified that it would have been normal procedure to conduct an inventory search upon securing the vehicle in the evidence barn, even absent consent or a warrant. Despite this testimony, the court, finding that there was no legal basis for Hicks to have entered the vehicle at that time, applied the inevitable discovery rule. The court reasoned that "the police were going to find that weapon in any event because according to their standard procedures, the vehicle was going to be taken back to the evidence barn and inventoried." Accordingly, the court went on to deny the motion to suppress.

We agree with the court that even if the officer's initial entry into the vehicle was a violation of the defendant's fourth amendment right to be free from illegal searches and seizures, the handgun would have been inevitably discovered. We therefore conclude that the court properly denied the motion to suppress.

"Under the inevitable discovery rule, evidence illegally secured in violation of the defendant's constitutional rights need not be suppressed if the state demonstrates by a preponderance of the evidence that the evidence would have been ultimately discovered by lawful means. . . . To qualify for admissibility the state must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the constitutional violation." (Citations omitted; internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 280 n.29, 764 A.2d 1251 (2001); see *Nix* v. *Williams*, 467 U.S. 431, 444, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984). The inevitable discovery rule applies in a situation in which, as here, the police would have legally discovered the evidence eventually. Here, the police would have discovered the gun through the inventory conducted in accordance with the police department policy.

It is clear that the police would have discovered the gun on the driver's side floor of the car after it was brought to police headquarters because of the department's inventory procedures. An inventory search is "a well-defined exception to the warrant requirement. . . . In the performance of their community caretaking functions, the police are frequently obliged to take automobiles into their custody. . . . A standardized procedure for making a list or inventory as soon as reasonable after reaching the stationhouse not only deters false claims but also inhibits theft or careless handling of articles taken from the arrested person." (Citations omitted; internal quotation marks omitted.) *State* v. *Gasparro*, 194 Conn. 96, 107, 480 A.2d 509 (1984), cert. denied, 474 U.S. 828, 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985).

The police were actively trying to contact the registered owner, DeLoughy, at the time that Hicks entered the vehicle. The police contacted DeLoughy's residence

and her place of employment, and they left several messages for her on her voicemail. In addition, the car was parked in a private parking lot where there were several different businesses and much traffic in and out. Furthermore, the police, having arrested the defendant, created the situation in which the car would be parked in the lot for hours or even potentially overnight. It was all of these circumstances that entered into the decision on the part of the police to secure the vehicle while continuing to attempt to contact the owner of the vehicle. Bringing a vehicle to a secure location while waiting for consent was in accordance with normal department procedure. Also part of departmental procedure was inventorying any vehicle of which the police were in possession in order to protect the police from claims of loss or damage to property. Even if the police had a truck tow the vehicle to the evidence barn, the handgun would have been found once the vehicle was searched pursuant to departmental policy.

The rationale behind the inevitable discovery rule is to prevent the police from being in a worse situation than they would have been had the initial illegality not occurred. See *State* v. *Badgett*, 200 Conn. 412, 433, 512 A.2d 160 ("[f]airness can be assured by placing the State and the accused in the same positions they would have been in had the impermissible conduct not taken place" [internal quotation marks omitted]), cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). The police would have found the handgun when they inventoried the vehicle once they had towed the car to the evidence barn. Therefore, the court properly denied the motion to suppress the gun as evidence.

The judgments are affirmed.

In this opinion the other judges concurred.