### STATE OF CONNECTICUT *v.* BRUCE ROGERS (12003)

HEALEY, SHEA, DANNEHY, SANTANIELLO and S. FREEDMAN, Js.

Argued January 14—decision released April 22, 1986

*Susan A. Brown,* certified legal intern, with whom were *Todd D. Fernow* and, on the brief, *Joan Kulowski,* certified legal intern, for the appellant (defendant).

*Jonathan C. Benedict*, assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

S. FREEDMAN, J. This appeal raises two issues: (1) whether a decision granting a motion to sever a similar prosecution prevented the trial judge from admitting evidence of the severed criminal activity during the state's case-in-chief; and (2) whether the trial judge erred in allowing evidence of constancy of accusation as to uncharged misconduct. We find no error.

After a trial to a jury the defendant, Bruce Rogers, was found guilty of sexual assault in the first degree and larceny in the fourth degree and received a total effective sentence of not less than ten nor more than twenty years. He appeals from that conviction.

The jury could reasonably have found the following facts. On January 30, 1980, at 6 a.m., the victim, a Stratford resident, received the first of many telephone calls from a male caller. Asked to identify himself, he responded, "You know who." She mistakenly assumed him to be a flight attendant whom she had recently met. Pretending he wanted to see her, he offered to fly to New York and promised to call back with his arrival time. Within several hours he called to confirm and said he would call again. He called as promised, indicating that he would arrive the next morning at 10 a.m. He asked her to book a reservation for him at the Howard Johnson's motel in Stratford and to meet him there. She agreed and booked the room but waited at home the next morning. He called again about twelve o'clock, told her he was in New York, and repeated his request that she meet him at the motel.

She finally went to the motel where, after waiting in the lobby, she paid for the room and checked in. He

called the room informing her that he was in Fairfield and that he was leaving soon. Shortly thereafter he again called, said he was in the lobby with his luggage, and was coming to the room. He asked her to leave the door ajar, but she kept it locked and waited for his knock. When he failed to appear, she opened the door to look in the hallway where she saw a man she identified as the defendant walk down the hall. She returned to the room for her key, determined to look for her friend in the lobby.

As she reentered the room, the man she saw in the hallway entered behind her, grabbed her and held a hand over her mouth. He warned her to be quiet and walked her into the room. He brought out a knife and told her he would not use it if she was "good." He then gagged and blindfolded her. She recognized his voice as that of the man on the phone. After checking over the room, he removed her clothing. He also removed his own shirt and ordered her to scratch his nipples. She obeyed. He then kissed her and forced her to perform fellatio. Dissatisfied with her compliance, he again threatened her with his knife, removed the rest of his clothes, and had sexual intercourse with her. When he finished, he rolled her onto her stomach. He dressed and entered the bathroom. He told her he was hiding her clothes and threatened her again. He also took a pearl ring and a turquoise ring from her person and removed some money from her wallet. When she no longer heard him, she got up. Finding her clothes in the bathroom, she dressed and called the police and her parents.

About a week later the victim's family began receiving phone calls during which the caller either said nothing or hung up. Detective Nancy Sirois of the Stratford police had a telephone tap placed on the phone. The victim subsequently received a call and recognized the

caller's voice as that of the man who had assaulted her. The call was traced to the home of the defendant, quite close to the motel where the attack occurred. The next day at police headquarters, Sirois dialed the defendant's home. The person who answered identified himself as "Bruce." The victim, listening on an extension, recognized the voice of Bruce as that of her male caller and then got off the phone. During the balance of a flirtatious conversation, Sirois pretended to set up a meeting with him that day. The police drove the victim to several locations, where she then saw and identified the defendant as her attacker.

At trial, Sirois related the various aspects of the victim's statement to her under the constancy of accusation exception to the hearsay rule, thereby corroborating the victim's testimony.

Shortly after his arrest for the present offense, the defendant was arrested in connection with a prior unrelated sexual assault and robbery of another victim which took place November 23, 1979. The defendant pleaded not guilty and elected jury trials in both cases. He then moved for separate trials, arguing, in essence, that there was a likelihood of jury confusion. The court, *Hull, J.*, granted the motion on April 28, 1980. Prior to trial, the defendant also moved to suppress evidence of the November 23, 1979 sexual assault. On November 15, 1982, the court, *Callahan, J.*, denied the motion to suppress on the grounds that the evidence was relevant to the identification and "modus operandi" of the defendant and that its probative value outweighed its prejudicial effect.

At trial, the state offered as a witness the victim of the November 23, 1979 sexual assault. She testified that on November 22, 1979, she answered the telephone and a male voice said, "Hi. Hold on. I miss you." She thought it was a married friend from work. He asked

her to meet him at Howard Johnson's in Stratford and she agreed. She also agreed to take a room there under her name and to wait for his call indicating he was leaving.

She went to the motel, registered as agreed and waited. The male called and said he was delayed and then phoned again to say he was leaving and would call again when he was about five minutes from the motel. He phoned once more stating he was five minutes away and asked her to unlock the door so he could let himself in. She agreed to wait but would not unlock the door. He called once again asking why the door was locked and she replied that she would let him in when he came. Soon thereafter, she heard a corridor door and looked out the peephole in her door. She saw no one but a black male standing alongside the door whom she identified as the defendant. She received yet another call indicating he had been there and he asked again why the door was locked. She repeated her earlier reply and he agreed to return. After a few minutes waiting she again looked out and saw the same black male. Again the phone rang and again she refused to unlock the door.

Hearing the corridor door once more, she looked out and saw the same black male. She opened the door to see what he wanted. He then grabbed her, put a hand over her mouth, and pushed her into the room and held her face down on the bed. He warned her not to fight or he would kill her. After kissing and handling her legs, he rolled her over on her back, unbuttoned his shirt and told her to scratch his nipples, which she did. Then he removed the rest of her clothes and sexually assaulted her. He then turned her onto her stomach, removed some things from her purse and took a bracelet from her hand. He went into the bathroom and subsequently left. She retrieved her clothes from the bathtub and called the manager, asking him to call the police.

Although this victim had been unable to identify any photos of her attacker, she was called by Sirois in February, 1980, who referred to a similar incident, and subsequently showed her ten photos. She selected the defendant from the array almost immediately.

Sirois, recalled to the stand, was then asked to testify to the details of the second[1] victim's statement under the constancy of accusation rule. The defendant objected on the ground of hearsay, and also because no proper foundation had been established for its introduction.[2] The court overruled the objection and an exception was taken. Sirois then related the details of the other victim's story. She testified that both victims had given almost identical descriptions of their assailants.

I

The defendant argues that because the court earlier granted the motion to sever, it prevented the trial judge from admitting testimony regarding the severed case as evidence of prior misconduct. He submits that the prior ruling constituted an affirmative finding that the probative value of the November 23, 1979 sexual assault was outweighed by its prejudicial effect on the

---

[1] "Second" refers to the victim of the 1979 assault, who was the second victim to testify at the trial.

[2] "[By the state]: Would you please tell the ladies and gentlemen of the jury what, if anything, it was that she told you?

"Mr. Ruane: I object. Hearsay.

"The Court: What about constancy of accusation?

"Mr. Ruane: I don't think the threshold is for [sic] the constancy section.

"The Court: Which is what?

"Mr. Ruane: Threshold evidence that, in fact, [the victim] had related all of this to Patrolwoman Sirois. I don't think that came out on direct examination this morning.

"The Court: Yes, it did. Yes.

"Mr. Ruane: The record would so reflect, if I am in error.

"The Court: Yes. That objection is overruled.

"Mr. Ruane: Exception, please."

defendant, which finding was binding on the trial court and precluded it from admitting otherwise relevant and material evidence. We cannot agree.

The defendant's argument would grant the earlier ruling an effect reaching far beyond its essential holding. The earlier ruling that the two cases be tried separately was independent of and did not control the trial court's later ruling that evidence of the severed crime was admissible in proof of the crime on trial. Judge Hull ruled only that the separate charges against the defendant be tried separately. The question whether evidence of the November 23, 1979 sexual assault was admissible in proof of the crime on trial was a separate issue to be decided by the trial court in accordance with our rules of evidence governing the admissibility of evidence of other crimes.

Moreover, even if the two rulings were not independent of each other, it is well established that a trial judge need not follow the decisions of another judge made at an earlier stage of the proceedings. *Breen* v. *Phelps,* 186 Conn. 86, 98, 439 A.2d 1066 (1982); *Santore* v. *Kleinberger,* 115 Conn. 631, 638, 163 A. 107 (1932). A judge may find it appropriate to rely upon a previous ruling. But the law of the case is not an inflexible principle and in a proper situation a judge may modify or depart from an interlocutory ruling of another coordinate magistrate, in whole or in part. *Breen* v. *Phelps,* supra, 98–100.

The defendant concedes the remarkable similarity of the two crimes. Indeed, he acknowledges that "he would be hard pressed to obtain a reversal . . . on the grounds that Judge Callahan's decision to admit this other crimes evidence, if considered independently of any pre-existing ruling, was a manifest abuse of discretion." The method used in each case was so similar that without question it meets all the necessary criteria

for a classic "signature" offense. *State* v. *Crosby,* 196 Conn. 185, 190–91, 491 A.2d 1092 (1985); *State* v. *Howard,* 187 Conn. 681, 686, 447 A.2d 1167 (1982); *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982). The probative value of the November 23, 1979 sexual assault clearly outweighed its prejudicial effect. We find that the trial court's ruling was correct and that it was not affected by the motion to sever. The court did not abuse its discretion in admitting this evidence at trial.

## II

The defendant also claims the court erred in permitting Sirois, under the constancy of accusation exception to the hearsay rule, to corroborate the testimony of the victim of the November 23, 1979 sexual assault. He argues that only the testimony of the victim of the offense on trial may be so corroborated and that since the victim of the November 23, 1979 sexual assault was not the "complaining" witness in this case, Sirois should not have been permitted to corroborate her testimony.

This claim was not distinctly raised at trial. Claims first raised on appeal will not ordinarily be reviewed by this court. Practice Book § 3063; *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973). "[T]he objecting party ought properly to be required to notify the court what objections are relied on, so as to give opportunity for second thought . . . . " 2 Stephenson, Conn. Civ. Proc. (2d Ed.) § 188, p. 750; *State* v. *Tyler-Barcomb,* 197 Conn. 666, 672, 500 A.2d 1324 (1985); *State* v. *Rothenberg,* 195 Conn. 253, 263, 487 A.2d 545 (1985); *State* v. *Baker,* 182 Conn. 52, 56, 437 A.2d 843 (1980). Practice Book § 288 requires counsel making an objection to evidence to state the grounds upon which it is claimed, "succinctly and in such form as he

desires it to go upon the record . . . . "[3] Practice Book § 3063 clearly relieves the Supreme Court of any obligation to consider a claim not distinctly raised at trial.[4]

These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. *State* v. *Jones,* 193 Conn. 70, 88, 475 A.2d 1087 (1984); *State* v. *Jackson,* 3 Conn. App. 132, 135, 485 A.2d 934 (1985). Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the judge and the opposing party to trial by ambush. *State* v. *Brice,* 186 Conn. 449, 457, 442 A.2d 906 (1982). Section 288 of our Practice Book is far too often honored in the breach. "Only in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." *State* v. *Evans,* supra.

The claim on appeal is that the constancy of accusation exception to the hearsay rule applies only to a complaining witness in a sexual assault case, and not to a witness who testifies to other uncharged sexual misconduct. At trial, the defendant first objected on the basis that the testimony was hearsay and then on the basis that a proper foundation had not been established. Nowhere did he refer to the distinction between a complaining victim and a mere witness as the basis for his

---

[3] Practice Book § 288 provides: "Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had. Argument upon such objection shall not be made by either party unless the court requests it and, if made, must be brief and to the point. An exception to the ruling must be taken in order to make it a ground of appeal."

[4] Practice Book § 3063 provides: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court."

462

objection. Neither the claim of hearsay nor the claim of lack of foundation alerted the court to the precise claim on appeal. That the defendant objected does not change this principle. The defendant's failure to raise distinctly in the trial court the grounds upon which he now relies effectively deprived the trial court of the opportunity to consider the matter in the first instance. A review of the record affords no basis to consider this newly raised claim. See *State* v. *Stevenson,* 198 Conn. 560, 572, 504 A.2d 1029 (1986); *State* v. *Rawls,* 198 Conn. 111, 115–16, 502 A.2d 374 (1985); *State* v. *Gooch,* 186 Conn. 17, 18, 438 A.2d 867 (1982); *State* v. *Cosby,* 6 Conn. App. 164, 172–74, 504 A.2d 1071 (1986). The claim does not fall under the oft repeated bypass rule of *State* v. *Evans,* supra, because the error claimed is not of a constitutional dimension and does not deprive the defendant of a fair trial. Accordingly, we will not review it.

In any event, since the other victim's evidence was properly before the jury, Sirois' corroborative testimony was merely cumulative and was therefore harmless. *State* v. *Randolph,* 190 Conn. 576, 589–90, 462 A.2d 1011 (1983); *State* v. *Jeustiniano,* 172 Conn. 275, 283, 374 A.2d 209 (1977).

There is no error.

In this opinion the other judges concurred.

