******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* STEVEN
K. STANLEY
(AC 35600)

Beach, Keller and Mihalakos, Js.

*Argued May 18—officially released November 3, 2015*

(Appeal from Superior Court, judicial district of
Hartford, geographical area number twelve, Fuger, J.

[motion to disqualify]; C. Taylor, J. [motions to strike, dismiss, for mistrial].)

*Deborah G. Stevenson*, assigned counsel, for the appellant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Anthony J. Spinella*, assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Steven K. Stanley, appeals from the judgment of conviction of 100 counts of criminal violation of a protective order in violation of General Statutes § 53a-223,[1] stalking in the first degree in violation of General Statutes § 53a-181c, and threatening in the second degree in violation of General Statutes § 53a-62. On appeal, he claims that (1) his conviction of violation of a protective order was based on insufficient evidence, (2) discovery violations regarding his and the victim's cell phone records deprived him of his constitutional rights, (3) the trial court erred in declining to suppress or to strike his and the victim's cell phone records, and (4) his constitutional rights were violated when the same judge who had signed the warrant for his arrest also denied his motion to suppress evidence that had formed, in part, the basis for the application in support of the arrest warrant. We are not persuaded and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim[2] had had a dating relationship. On February 10, 2012, the victim called the police from a bar and reported that she feared for her safety because the defendant was making threatening phone calls to her from the parking lot of the bar. After Officer Jason Guerrera of the East Hartford Police Department arrived, the defendant was detained in the vicinity of Guerrera's police cruiser, awaiting a ride from his son. He made threatening phone calls to the victim while so detained. Guerrera overheard the calls. The defendant was arrested and handcuffed.

Following this incident, on February 14, 2012, the court issued a protective order that required the defendant "not [to] contact [the victim] in any manner, including by written, electronic or telephone contact . . . ." Despite this order, the defendant phoned the victim between forty and ninety times a day for a period of time. On at least one occasion the defendant offered to buy the victim a drink at a bar that she frequented.

On March 18, 2012, the victim called the police to report that the defendant was violating the protective order by telephoning her constantly. East Hartford police Officer Robert A. Vanacore responded by going to her residence and taking her statement. Later that day, the victim called the police a second time; she then reported that the defendant had appeared in front of her house, and, "burn[ing] rubber," drove his motorcycle away at a high rate of speed. The victim's roommate, Gene Lavigne, also gave a statement to the police, confirming that the defendant had driven his motorcycle by the house. While police were interviewing the victim, the defendant called and spoke to her three times.[3] The victim put the cell phone on speaker so that East Hartford police Officer Daniel Zaleski and Vanacore[4]

were able to overhear the calls.

Vanacore sought and obtained the defendant's phone records. After reviewing the records and discovering that approximately 1750 phone calls from the defendant's cell phone to the victim's cell phone had been made between February 14, 2012, and March 24, 2012, Vanacore requested an arrest warrant for the defendant. The state originally charged the defendant with 372 counts, but later filed an amended information that included 102 counts, specifically, 100 counts of criminal violation of a protective order, one count of stalking in the first degree, and one count of threatening in the second degree.

The defendant chose to represent himself, and following a trial, the jury found the defendant guilty of all 102 counts. The court sentenced the defendant to eighteen years imprisonment with twelve years special parole and imposed a standing criminal protective order. This appeal followed.

I

The defendant claims that his conviction of 100 counts of violation of a protective order was not supported by sufficient evidence. The defendant admitted that the calls were made from his cell phone, but he argues that the state failed to prove that he personally made the phone calls to the victim. He argues that the number on her caller identification function was blocked. The victim testified that she recognized the defendant's voice on two occasions only. The state argues that there was sufficient evidence to sustain the defendant's conviction in that (1) the victim's phone records listed the calls as having been made from the defendant's cell phone number; (2) the victim identified the defendant's voice on several occasions; (3) the defendant showed consciousness of guilt by writing to his sons to ask them to testify that they made the phone calls; and (4) the defendant demonstrated other intimidating and harassing behavior that was consistent with the repeated phone calls. We agree with the state that there was sufficient evidence to sustain the defendant's conviction of violation of a protective order. Although there was direct evidence that the defendant made only a limited number of the calls, there was circumstantial evidence to support the conclusion that the defendant made the calls as charged in the amended information.[5]

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [jury] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable." (Internal quotation marks omitted.) *State* v. *Binnette*, 86 Conn. App. 491, 496–97, 861 A.2d 1197 (2004), cert. denied, 273 Conn. 902, 868 A.2d 745 (2005).

In support of the charges, the state presented the testimony of the victim, who received the calls, police officers who overheard one of the threatening phone calls, and the victim's phone records. The jury had before it evidence of more than 1750 calls made from the defendant's cell phone to the victim's cell phone. The jury also heard evidence regarding the failed relationship between the victim and the defendant, and his previously threatening behavior. The victim identified his voice on three phone calls made on March 18, 2012.[6] The defendant also wrote letters to family members advising them to testify that they had made phone calls to the victim. The jury reasonably could have inferred from this evidence that it was the defendant himself who made all of the phone calls reflected in the victim's phone records. None of the defendant's witnesses[7] testified that they made many of the calls from the defendant's cell phone, as he contended.[8] We conclude that the defendant's conviction of violation of a protective order was based on sufficient evidence.

## II

The defendant claims that the state failed to provide him with his phone records and the victim's phone records in a timely manner and that he therefore was deprived of (1) his right to confront the witnesses

against him and (2) his right to present a defense.[9]

Additional facts are helpful to the resolution of the defendant's claims. The police obtained the defendant's phone records at the outset of the investigation. The defendant moved for discovery, including requests for "all facts of [the] arrest" and "all evidence."[10] The court, *C. Taylor, J.*, granted the motions on February 21, 2012, and May 8, 2012. The defendant subsequently made several motions for the court to order the state to comply with the prior orders and turn over several items, including relevant phone records relating to both the defendant and the victim. On August 17, 2012, at a hearing before Judge Fuger, the state said that it did not have either the defendant's phone records or the victim's phone records, but that if it did obtain them, it would disclose them to the defendant. Judge Fuger said that if the state attempted to introduce the records without having first provided them to the defendant, he would not allow them into evidence. The defendant eventually obtained at least a substantial part, if not all, of his phone records. The state reported that it did not receive the victim's phone records until the first day of the defendant's trial.

On the first day of trial, the state introduced only the victim's phone records. The court admitted the records as a full exhibit on the first day of trial, but the records were not published to the jury until the next day so that copies could be provided to the defendant for his review overnight. The defendant did not object to this arrangement, and did not ask for a continuance to allow for more time to review the victim's phone records. The defendant then used the victim's phone records in an attempt to impeach her on the third day of trial. The state did not seek to enter the defendant's phone records into evidence.

A

The defendant argues that the state's failure to disclose the victim's phone records resulted in a denial of his right to confrontation under *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).[11]

The defendant raises this claim, for the first time, on appeal and requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[12] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of

any one of these conditions, the defendant's claim will fail. . . . The defendant also bears the responsibility of demonstrating that his claim is indeed a violation of a fundamental constitutional right. Patently nonconstitutional claims that are unpreserved at trial do not warrant special consideration simply because they bear a constitutional label." (Citations omitted; emphasis in original; footnote omitted.) Id.; see *In re Yasiel R.*, 317 Conn. 773, 781,      A.3d      (2015) (modifying *Golding*'s third prong).

The defendant argues that the phone records were testimonial in nature because they were compiled solely for use against him at trial, and that they were offered to prove the truth of the matter asserted. Because he was not able to cross-examine the maker of the phone records prior to or during trial in violation of his rights under the confrontation clause, he argues, the phone records should not have been admitted into evidence. We conclude that the admission of the victim's phone records into evidence did not implicate a sixth amendment right and, thus, the defendant's claim fails under *Golding*.

"Answering the threshold question in a *Crawford* analysis—whether the statements in question were testimonial in nature—also answers whether the defendant has met the burden presented under *Golding*'s second prong, which requires a claim of constitutional magnitude." *State* v. *Jones*, 140 Conn. App. 455, 469, 59 A.3d 320 (2013), aff'd, 314 Conn. 410, 102 A.3d 694 (2014). "In *Crawford* v. *Washington*, [supra, 541 U.S. 36], the [United States] Supreme Court substantially revised its approach to confrontation clause claims. Under *Crawford*, testimonial hearsay is admissible against a criminal defendant at trial only if the defendant had a prior opportunity for cross-examination and the witness is unavailable to testify at trial. . . . In the wake of *Crawford*, therefore, the preliminary step in any confrontation clause analysis is the determination of whether the subject statements are testimonial hearsay. . . . Our Supreme Court has noted that, although there is no comprehensive definition of testimonial, it is clear that much of the [United States] Supreme Court's and our own jurisprudence applying *Crawford* largely has focused on the reasonable expectation of the declarant that, under the circumstances, his or her words later could be used for prosecutorial purposes." (Citation omitted; internal quotation marks omitted.) *State* v. *Young*, 157 Conn. App. 544, 565, 117 A.3d 944, cert. denied, 317 Conn. 922, 118 A.3d 549 (2015).

There was nothing to suggest at trial that the victim's phone records were other than business records of the telephone company. Section 8-4 of the Connecticut Code of Evidence provides in relevant part: "(a) . . . Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or

record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter. (b) . . . The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility." (Internal quotation marks omitted.) See also General Statutes § 52-180; *United States* v. *Yeley-Davis*, 632 F.3d 673, 679 (10th Cir.) (cell phone records not testimonial in nature; thus, no confrontation clause violation occurred), cert. denied, U.S. , 131 S. Ct. 2172, 179 L. Ed. 2d 951 (2011); *State* v. *Hood*, 135 Ohio St. 3d 137, 145, 984 N.E.2d 1057 (2012) ("[e]ven when cell-phone companies, in response to a subpoena, prepare types of records that are not normally prepared for their customers, those records still contain information that cell-phone companies keep in the ordinary course of their business"). Because there was nothing to suggest that the automated compilation of records of all customers' calls was other than standard business routine, the records were not testimonial in nature and *Crawford* did not apply. See *Crawford* v. *Washington*, supra, 541 U.S. 56. Accordingly, the claim fails under the second prong of *Golding*.

B

The defendant argues that his right to present a complete defense pursuant to the sixth amendment to the United States constitution,[13] as applied to the states through the fourteenth amendment, was violated by the prosecutor's failure to disclose the phone records to him in a timely fashion.[14] The defendant argues that he wanted "to compare the two sets of records, to determine if the days and times corresponded, to determine whether he had any alibi defense for any of the days and times,[15] and for impeachment of the state's witnesses."[16] (Footnote added.) We are not persuaded.

The record indicates that the state did not have the victim's phone records until the morning of the first day of trial. The defendant had the opportunity to review them overnight before they were published to the jury. At the time of the entry of the victim's phone records into evidence, the following colloquy took place:

"The Court: All right. Then, anything else on the issue of the phone records?

"[The Defendant]: I guess some of that file will be turned over to me.

"The Court: All right. Counselor, have you made a copy of it?

"[The Prosecutor]: I can have it done, Judge.

"The Court: All right. Then—I'm sorry?

"[The Defendant]: I would just like it so that I can check each and every number correspondence with mine to see who her phone went to.

"The Court: All right. What we will do—how many more questions do you have for this witness? . . . Then, what I will do, then, based on the arguments that were presented to me by the defense, I will—the records can be marked in this matter as full exhibits. The defendant has stated no grounds for them not to be. However, with that said, I will order that the state make copies of the records and give them to the gentleman so that he can take them back with him today, so he can review those records and then we will go from there."

The defendant did not object to this arrangement. The basis for the defendant's argument on appeal is that "[p]recluding the defendant from obtaining the complete phone records, in a timely fashion prior to court, severely prejudiced the defendant . . . ." He does not deny that he obtained the phone records; rather, he now argues on appeal that his defense was compromised by the timing. The defendant points to no concrete way in which his defense was compromised; his principal defense was a claim that, although the calls were made from his phone, the state had not proved that he had made the calls. As noted previously, the defendant used the victim's records to try to impeach her. Significantly, he could have requested a continuance, but he did not. See *State* v. *Lage*, 141 Conn. App. 510, 526–27, 61 A.3d 581 (2013) ("[o]ur Supreme Court expressly has declined to impose on the trial courts the duty to order a continuance sua sponte" [internal quotation marks omitted]); *Pasiakos* v. *BJ's Wholesale Club, Inc.*, 93 Conn. App. 641, 645, 889 A.2d 916, cert. denied, 277 Conn. 929, 896 A.2d 101 (2006). We conclude that the defendant's right to present a defense was not violated.

### III

The defendant claims that the court abused its discretion by declining to suppress or, sua sponte, to strike (1) his phone records and (2) the victim's phone records. We are not persuaded.

In May, 2012, the defendant filed a motion to suppress his phone records and the victim's phone records pursuant to General Statutes § 54-41m,[17] which concerns wire-

tapping and electronic surveillance. The court did not rule on this motion. The state did not offer the defendant's phone records into evidence. The victim's phone records were admitted into evidence.

During trial, Vanacore, called by the state, testified that the victim consented to Vanacore's overhearing a cell phone call between the defendant and the victim. The victim activated the speakerphone option, and Vanacore heard the conversation. Vanacore testified that the code, *67, appeared on the screen, indicating that someone was "trying to block their phone number from the sender to the receiving phone calls." He further testified that the defendant's phone records reflected approximately 1750 phone calls from the defendant to the victim, that the *67 code preceded the defendant's phone number on the records of his calls to the victim, and that the code indicated that the defendant had tried to block his number.

In the course of his investigation, Vanacore obtained the defendant's phone records pursuant to the provisions of General Statutes § 54-47aa, which authorizes law enforcement officers to obtain records from telecommunication companies.[18] The defendant objected to the admission of the records into evidence because he had not been notified of the police access to his phone records within forty-eight hours of their disclosure to police in violation of § 54-47aa (d).[19] The state responded that it was not sure what the defendant was requesting in his objection and acknowledged that § 54-47aa had not been complied with. It further argued that a search warrant was not constitutionally required for the defendant's phone records because there is no reasonable expectation of privacy in one's phone records. The state questioned what the consequences might be if § 54-47aa (d) were not complied with, but concluded that the inquiry was not material because it was not offering the defendant's phone records into evidence in any event. The defendant then requested that "the phone records . . . be stricken from the record." The prosecutor stated that he was not offering the defendant's phone records into evidence. In response, the court stated, "Well, if he is not intending on offering them into evidence, then I don't see an issue here, presently." The defendant agreed: "I don't either, Your Honor." When the defendant raised the issue of the victim's phone records, the court stated that he had no standing to assert a claim as to another person's phone records.

### A

The defendant argues that the court abused its discretion in failing to "suppress and strike the defendant's phone records and testimony about them, in violation of the law of the case and his right to due process, a fair trial, and to present a defense." He argues that the phone records should have been suppressed because

the police violated § 54-47aa (d) by failing to notify him within forty-eight hours of the issuance of the ex parte order permitting the police to obtain the phone records. He also argues that the court erred in admitting Vanacore's testimony regarding facts contained in the phone records. We are not persuaded.

The defendant cannot prevail on his claim that the court erred in declining to grant his motion to suppress.[20] The court did not rule on the motion to suppress. The lack of a ruling on the motion to suppress has no bearing on this appeal because, first, the motion was made pursuant to the wiretapping statute and the defendant's claims on appeal pertain to notice under § 54-47aa. Second, the state chose not to offer the defendant's phone records into evidence. The claimed error did not occur.

The defendant also argues that the court erred in not striking sua sponte the portion of Vanacore's testimony that pertained to the defendant's phone records. This argument is slightly different from the claim regarding the motion to suppress. The claim was not preserved[21] and fails under the second prong of *Golding* because it is simply evidentiary in nature. "[T]he admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved." (Internal quotation marks omitted.) *State* v. *Dews*, 87 Conn. App. 63, 68, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005).

B

The defendant also claims, with regard to the victim's phone records, that the court erred in not granting his motion to suppress and erred in not striking the victim's phone records from evidence. The defendant argues that the court, *C. Taylor, J.*, erred in admitting the victim's phone records into evidence because during a pretrial proceeding, the court, *Fuger, J.*, had stated, when discussing the defendant's discovery requests for the phone records, that "I will tell you that come trial, if this case goes to trial, that if any of these documents that fit within this description are attempted to be used and you have not . . . had them previously disclosed to you, then if you move to strike them from evidence, that will be granted." The defendant argues that the admission of the victim's phone records violates the law of the case doctrine, and his rights to due process, a fair trial and to present a defense. We are not persuaded.

The motion to suppress sought to suppress the victim's phone records on the basis of the wiretapping statute, and not the statute being argued on appeal, which is the notice provisions of § 54-47aa. Accordingly, the claim regarding § 54-47aa is unpreserved. The defendant requests review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, the plain error doctrine; Prac-

tice Book § 60-5; and review under the exercise of our supervisory powers over the administration of justice. He argues that his rights to due process, a fair trial, and to present a defense were violated. The defendant does not have standing to raise constitutional issues regarding the admission of the phone records of a third party.[22] "[A] party is precluded from asserting the constitutional rights of another." (Internal quotation marks omitted.) *State* v. *Iban C.*, 275 Conn. 624, 665, 881 A.2d 1005 (2005).

The defendant's claim as to the court's denial of his motion to strike the victim's phone records from evidence fails for similar reasons. The defendant cannot assert the constitutional rights of the victim. Additionally, there is nothing in § 54-47aa to suggest that the defendant is to receive notice regarding a third party's phone records. Rather, § 54-47aa (d) provides in relevant part: "Not later than forty-eight hours after the issuance of an order pursuant to subsection (b) of this section, the law enforcement official shall mail notice of the issuance of such order to the *subscriber or customer whose call-identifying information or basic subscriber information is the subject of such order* . . . ." (Emphasis added.) The fact that the victim's phone records show that she received calls from the defendant's cell phone does not, in itself, make the statute applicable. We once again stress that there never was a dispute at trial that the calls came from his cell phone.

Last, the defendant argues that in denying the motion to strike, Judge Taylor violated the law of the case doctrine because Judge Fuger commented that a motion to strike would be granted if the phone records were offered into evidence and the defendant had not had the records disclosed to him. "The law of the case doctrine provides that [w]here a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Internal quotation marks omitted.) *Signore* v. *Signore*, 110 Conn. App. 126, 133, 954 A.2d 245 (2008). Under the law of the case doctrine, "it is well established that a trial judge need not follow the decisions of another judge made at an earlier stage of the proceedings. . . . A judge may find it appropriate to rely upon a previous ruling. But the law of the case is not an inflexible principle and in a proper situation a judge may modify or depart from an interlocutory ruling of another coordinate magistrate, in whole or in part." (Citations omitted.) *State* v. *Rogers*, 199 Conn. 453, 459, 508 A.2d 11 (1986). The law of the case doctrine is not implicated because, first, Judge Taylor's ruling was not necessarily inconsistent with Judge Fuger's comment: the victim's phone records were disclosed to the defendant and the defendant had time to review them. Second, even if the rulings were

inconsistent, "a trial judge need not follow the decisions of another judge made at an earlier stage of the proceedings." Id.

IV

The defendant claims that his rights were violated in a number of ways when the same judge who had signed his arrest warrant, which was based in part on the phone records at issue, also denied his motion to suppress the phone records. He claims that this circumstance violated Practice Book § 41-17, canon 3 of the Code of Judicial Conduct, and his rights under the federal constitution[23] to a fair trial and to due process. We disagree.

On May 15, 2012, the defendant filed a motion seeking to disqualify the court, *Fuger*, *J.*, pursuant to Practice Book § 41-17 from presiding over motions relating to the phone records because Judge Fuger had signed his arrest warrant. The court, *Fuger*, *J.*, denied the motion for disqualification.

The defendant cannot prevail on his claim that Practice Book § 41-17 was violated because that rule of practice is inapplicable. Section 41-17 provides: "A judicial authority who signed any warrant or order for the seizure of property, testimony or evidence or for the interception of any communications shall not preside at any hearing on a motion made pertaining to such warrant or order." Judge Fuger did not sign a search warrant, nor did he rule on the validity of such a warrant. He did sign an arrest warrant, but no claim is made that Judge Fuger ruled on any motion or order directly attacking the arrest warrant. The policy behind § 41-17 also was not broached. See *State* v. *Canales*, 281 Conn. 572, 598–99, 916 A.2d 767 (2007).

The defendant's claims under the federal constitution are unpreserved. The defendant requests review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. The defendant's claim fails under the second prong of *Golding*, which requires that the claim be of constitutional magnitude. Id., 239. "The United States Supreme Court consistently has held that a judge's failure to disqualify himself or herself will implicate the due process clause only when the right to disqualification arises from actual bias on the part of that judge. . . . [It has stated that] the requirements of [federal] due process are less rigorous than those of the Code of Judicial Conduct, which mandates both impartiality and the appearance of impartiality. . . . [M]ost questions concerning a judge's qualifications to hear a case are not constitutional ones, because the [d]ue [p]rocess [c]lause of the [f]ourteenth [a]mendment establishes a constitutional floor, not a uniform standard. . . . Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar. . . . But the floor established by the [d]ue [p]ro-

cess [c]lause clearly requires a fair trial in a fair tribunal . . . before a judge with no actual bias against the defendant or interest in the outcome of his particular case. . . . [C]ertainly only in the most extreme of cases would disqualification on [the basis of allegations of bias or prejudice] be constitutionally required . . . . [The] due process clause generally [is] interpreted to require only lack of actual bias, not lack of appearance of bias." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Canales*, supra, 281 Conn. 594–95. The defendant does not allege actual bias, nor is there any suggestion of actual bias in the record. His claim fails under the second prong of *Golding* because it is not of constitutional magnitude.[24]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-223 (a) provides in relevant part: "A person is guilty of criminal violation of a protective order when an order issued pursuant to subsection (e) of section 46b-38c . . . has been issued against such person, and such person violates such order."

We note that this subsection has been amended since the date of the offense. See, e.g., Public Acts 2014, No. 14-173, § 5. Because that amendment does not affect issues in this appeal, all references to § 53a-223 are to the current revision of the statute.

[2] In accordance with our policy of protecting the privacy interest of the victim of a criminal violation of a protective order, we decline to identify the victim or others through whom the victim's identity may be ascertained.

[3] The defendant entered into evidence a police report that documented the March 18, 2012 cell phone calls: "Phone call #1 [the defendant] said 'I'm done' and then hung up. Phone call #2 [the defendant] said 'You just signed your own death certificate' and then hung up. Phone call #3 [the defendant] said 'Bitch why did you call the cops on me' 'Bitch' 'You are a snitch' and then was hung up on by [the victim]." Another police report recounted the threat in the first phone call as, "you're going down."

[4] Vanacore overheard only the third cell phone call.

[5] In the context of his argument that introduction of phone records violated his sixth amendment right to confront witnesses; see part II A of this opinion; the defendant mentions that the state, in its closing argument, mentioned to the jury that there were many more phone calls in the victim's phone records than there were counts in the information. The defendant suggests that this incongruity underscored the need for a witness to supply more precision to the process of deciding who made the calls and that "the jury could pick which [calls violated the protective order] using [the victim's] phone records."

The defendant did not directly claim that the discretion of the jury to choose what calls to apply to specific counts constituted error. We note that the information charged that the defendant made a number of calls on several different days; the information did not allege specific times of day that the calls were made. The records, on the other hand, identified specific times that the calls were made. In the circumstances of this case, we find no harm in the manner in which the state chose to proceed.

[6] In the information, the defendant was charged with two violations of a protection order on March 18, 2012, as well as a stalking and threatening.

[7] When the defendant asked his mother whether she might have called the victim from the defendant's phone two or three times by accident, his mother responded that she might have, although she did not remember. The defendant's brother also testified that their mother might have used the defendant's phone to call the victim.

[8] The defendant also claims that the court erred in denying his posttrial motion to dismiss and motion for a mistrial. The motions were based, in part, on claims of insufficient evidence and failure to provide discovery. The defendant cannot prevail on his arguments for the same reasons that we conclude in part I of this opinion that there was sufficient evidence to support the defendant's conviction and in part II of this opinion that his claims of discovery violations lack merit. The defendant also appears to

argue that the court erred by providing a purely conclusory analysis in denying the motions, although he did not file a motion for articulation. See Practice Book § 66-5.

[9] The defendant also seems to argue that because the state was not sanctioned for discovery violations, the state violated his rights to due process and a fair trial. Whether the court imposes sanctions on the state does not implicate the defendant's constitutional rights. See, e.g., *State* v. *Colon*, 71 Conn. App. 217, 241, 800 A.2d 1268 ("[w]here discovery concerns inculpatory evidence, there exists no constitutional right to the disclosure of such evidence and, therefore, the rules of the court regulate any such disclosure"), cert. denied, 261 Conn. 934, 806 A.2d 1067 (2002).

The defendant did not request sanctions pursuant to Practice Book § 40-5, which provides in relevant part that "[i]f a party fails to comply with disclosure as required under these rules, the opposing party may move the judicial authority for an appropriate order. The judicial authority hearing such a motion may enter such orders and time limitations as it deems appropriate . . . ." The court, however, stated that "if this case goes to trial [and] if any of these documents that fit within this description [of the defendant's and the victim's phone records] are attempted to be used and you have not . . . had them previously disclosed to you, then if you move to strike them from evidence, that will be granted."

Further, we do not conclude that, in the circumstances of this case, the more general due process right to a fair trial was violated. The defendant's own phone records, a copy of which was apparently disclosed to him prior to trial, were not introduced into evidence, and he had the opportunity to review the victim's records during trial. Critically, he did not dispute that a multitude of calls had been made from his phone to the victim's phone.

[10] The defendant filed a third motion for discovery, requesting the video footage and audio recordings from the police car at the time of his arrest. The request was granted by the court, *Fuger*, *J.*, on March 7, 2012. That motion does not specifically refer to the phone records.

[11] We note that the state did not offer the defendant's phone records into evidence and, thus, *Crawford* v. *Washington*, supra, 541 U.S. 36, does not apply to those records.

[12] The defendant also requests reversal under the plain error doctrine; Practice Book § 60-5; see *State* v. *Domian*, 235 Conn. 679, 692, 668 A.2d 1333 (1996) (plain error reserved for "truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings" [internal quotation marks omitted]). Our conclusion that there was no error pursuant to *Crawford* precludes a conclusion of plain error.

The defendant further seeks review under our supervisory powers over the administration of justice; see *State* v. *Coward*, 292 Conn. 296, 315, 972 A.2d 691 (2009) (reviewing court's supervisory powers are an "extraordinary remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole" [emphasis omitted; internal quotation marks omitted]). This is not the type of extraordinary situation that our supervisory powers may address.

[13] "The sixth amendment to the United States constitution provides in relevant part: In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense. The sixth amendment is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . . The sixth amendment right to present a defense is made applicable to the states through the due process clause of the fourteenth amendment." (Citation omitted; internal quotation marks omitted.) *State* v. *Carpenter*, 275 Conn. 785, 794 n.2, 882 A.2d 604 (2005), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006).

The defendant also claims his rights under article first of the Connecticut constitution were violated. The defendant failed to provide a separate analysis of his claim under the Connecticut constitution, and, accordingly, we decline to afford it review. See *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992).

[14] There was evidence of more than 1750 phone calls from the defendant to the victim, but the state charged the defendant with only 100 counts of

violation of the protective order.

[15] To the extent that the defendant argues that he was denied his right to present a defense because the state did not identify the specific times of the phone calls in the information, his claim is unpreserved because he failed to file a motion for a bill of particulars. By failing to seek a bill of particulars, he waived his constitutional claim and is ineligible for *Golding* review. See *State* v. *Bazemore*, 107 Conn. App. 441, 455, 945 A.2d 987, cert. denied, 287 Conn. 923, 951 A.2d 573 (2008). In any event, specific times were referenced in records that he did review. There has been no showing that anything prevented his direct access to his own records at any time.

[16] It bears repeating that, contrary to his argument regarding a lack of ability to impeach the state's witnesses, the defendant actually used the victim's phone records to impeach her on the third day of trial.

[17] General Statutes § 54-41m provides: "Any aggrieved person in any trial, hearing or proceeding in or before any court, department, officer, agency, regulatory body or other authority of the state of Connecticut, or of a political subdivision thereof, may move to suppress the contents of any intercepted wire communication, or evidence derived therefrom, on the grounds that the communication was unlawfully intercepted under the provisions of this chapter; the order of authorization or approval under which it was intercepted is insufficient on its face; or the interception was not made in conformity with the order of authorization or approval. Such motion shall be made before the trial, hearing or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion, in which case such motion may be made at any time during the course of such trial, hearing or proceeding. If the motion is granted, the contents of the intercepted wire communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter and shall not be received in evidence in any such trial, hearing or proceeding. The panel, upon the filing of such motion by the aggrieved person, shall make available to the aggrieved person or his counsel for inspection the intercepted communication and evidence derived therefrom."

The defendant does not argue on appeal that the records were admitted into evidence in violation of the wiretapping statute.

[18] Vanacore testified that he obtained from AT&T "an ex parte search warrant" for the defendant's records at the time of his investigation. It is not clear why the state's attorney's office did not later have those records. In the circumstances of this case, as related at length, there is no apparent prejudice caused by the lack of immediate notification.

[19] General Statutes § 54-47aa (d) provides in relevant part: "Not later than forty-eight hours after the issuance of an order pursuant to subsection (b) of this section, the law enforcement official shall mail notice of the issuance of such order to the subscriber or customer whose call-identifying information or basic subscriber information is the subject of such order, except that such notification may be delayed" in certain circumstances.

[20] We note that Vanacore testified that the victim consented to the police listening to the phone call between her and the defendant. "[I]f one of the parties to a telephone conversation consents to wiretapping, the provisions of the wiretap act . . . do not apply." *State* v. *Tomasko*, 238 Conn. 253, 272, 681 A.2d 922 (1996).

[21] "[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party. . . . Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *State* v. *Adams*, 117 Conn. App. 747, 755, 982 A.2d 187 (2009).

In this case, not only was the claim not preserved, but the defendant went further and agreed with the court that there was no "issue" if the records were not admitted into evidence; there was no objection at all to Vanacore's testimony about the records.

[22] We decline to review the claim pursuant to the plain error doctrine or the exercise of our supervisory powers over the administration of justice.

[23] The defendant also claims that his rights under the Connecticut constitution were violated. The defendant, however, does not provide a separate analysis of his claim under the Connecticut constitution, and accordingly, we decline to afford it review. See *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992).

[24] The defendant also requests reversal pursuant to the plain error doctrine and the exercise of our supervisory powers over the administration of justice.

The defendant has not demonstrated that there was any error; thus, the plain error doctrine; see *State* v. *Domian*, 235 Conn. 679, 692, 668 A.2d 1333 (19960; and the use of our supervisory powers; see *State* v. *Coward*, 292 Conn. 296, 315, 972 A.2d 691 (2009), are not available.

The defendant further argues that the procedure violated General Statutes § 51-183h and canon 3 of the Code of Judicial Conduct (now rule 2.11). Neither of these claims are preserved for our review. See also *Francis* v. *Commissioner of Correction*, 142 Conn. App. 530, 545, 66 A.3d 501, cert. denied, 310 Conn. 921, 77 A.3d 141 (2013).